IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**VERONICA ROSE GRINDLEY**                                                      **PLAINTIFF**

**V.**                       **NO. 4:19-CV-589-JM-BD**

**ANDREW SAUL, Commissioner**
**Social Security Administration**[1]                                            **DEFENDANT**

## RECOMMENDATION

This Recommendation has been sent to Judge James M. Moody, Jr. Either party may file objections to this Recommendation if they disagree with its findings or conclusions. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction:

On March 24, 2016, Veronica Rose Grindley applied for disability benefits, alleging disability beginning January 25, 2016 (Tr. at 17) Her claims were denied both initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms. Grindley's application. (Tr. at 31) She requested that the

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Grindley filed this case seeking judicial review of the decision denying her benefits.

## II. The Commissioner's Decision:

The ALJ found that Ms. Grindley had not engaged in substantial gainful activity since the alleged onset date of January 25, 2016. (Tr. at 19) At step two of the five-step analysis, the ALJ found that Ms. Grindley had the following severe impairments: fibromyalgia, discoid lupus, hypertension, personality disorder, anxiety disorder, and affective disorder. (Tr. at 20)

After finding that Ms. Grindley's impairments did not meet or equal a listed impairment (Tr. at 20), the ALJ determined that Ms. Grindley had the residual functional capacity (RFC) to perform work at the light level, with some additional limitations: (1) she could frequently climb stairs and ramps; (2) she could never climb ladders, ropes, or scaffolds; (3) she could frequently stoop, kneel, crouch, crawl, reach, and handle; (4) she could tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, direct sun, and vibration; (5) she could never be exposed to unprotected heights or dangerous moving machinery; (6) she could understand and remember simple instructions; (7) she could sustain attention and concentration to complete simple tasks with regular breaks every two hours; (8) she could occasionally interact with supervisors, coworkers, and the public; and (9) she could adapt to routine work conditions and occasional work place changes. (Tr. at 22)

The ALJ concluded that Ms. Grindley was unable to perform any of her past relevant work. Relying on the testimony of a Vocational Expert (VE), the ALJ found that, considering Ms. Grindley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as office helper and cleaner or housekeeper. (Tr. at 30) Thus, the ALJ held that Ms. Grindley was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

### B. Ms. Grindley's Arguments on Appeal

Ms. Grindley maintains that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She makes a number of arguments, but all related to the ALJ's evaluation of her fibromyalgia and mental disorders.

The record has scant evidence of fibromyalgia treatment from the relevant time-period. In any event, a mere diagnosis of fibromyalgia, standing alone, does not establish a disabling impairment; there must be some evidence of impairment in functional capacity. *See Perkins v. Astrue*, 648 F.3d 892, 899-900 (8th Cir. 2011).

Ms. Grindley attested that she had 18 positive tender points upon examination (a common marker for fibromyalgia), but there is no evidence of that in the record. In general, musculoskeletal examinations were normal; she had full range-of-motion and full motor and sensory function, as well as normal gait. (Tr. at 22-29, 695, 698, 702, 721, 732, 741, 744)

Ms. Grindley argues that "the hallmark of fibromyalgia is the lack of objective evidence," but this contention is contrary to the basic tenet of social security disability law; that is, disability claims must be based on some supporting medical evidence. And, the plaintiff carries the burden of proving disability through the first four steps of the evaluative process. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). An ALJ is not required to assume evidence that is not there. Likewise, the Court will assume facts that are not supported by evidence in the record.

No doctor placed any restrictions on Ms. Grindley's activities to accommodate fibromyalgia. Ms. Grindley conceded she was able to perform daily chores, drive, shop in stores, go outside, and watch television. Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995)

Ms. Grindley points to medical source statements from her treating physician, Dr. Richard Heck, M.D., but there are records from only a few visits with Dr. Heck. A lack of treatment gives cause to discount a physician's opinion. Even so, the ALJ gave some weight to Dr. Heck's opinion, because he opined that Ms. Grindley would be able to frequently lift and carry up to 20 pounds, which is consistent with the RFC for light work. (Tr. at 924)

The ALJ found Dr. Heck's more restrictive postural limitations, however, inconsistent with the medical evidence. While Dr. Heck did not place any functional restrictions on Ms. Grindley and he stated that her mood was stable, he nonetheless opined that Ms. Grindley was disabled and not likely to improve. (Tr. at 1005) An ALJ may discount a treating physician's opinion that is internally inconsistent. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Moreover, Dr. Heck's opinions are on short check-the-box forms, with little elaboration and no references to medical records. Forms of this type are not entitled to great weight. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

Other factors weigh against Ms. Grindley's claims of disability: her illegal drug use and non-compliance with treatment recommendations. She tested positive for cocaine and opiates in January of 2016. (Tr. at 696-697, 720, 743, 748) She admitted that she was abusing hydrocodone. (Tr. at 866) Her mental health counselor told her repeatedly that she would not be entitled to continue treatment if she did not seek help for her substance

abuse. (Tr. at 857-860) There is no evidence she ever sought drug rehabilitation. Ms. Grindley stated that she did not try to get a job because she was afraid she would fail a drug test. (Tr. at 862). She was terminated from a job in 2014 for stealing to support her drug habit. (Tr. at 797, 914)

While medication helped Ms. Grindley, she admitted to her doctors that she often failed to fill her prescriptions or simply did not take her medications. (Tr. at 804, 810, 811, 814, 823) Even though she was counseled on compliance, she remained noncompliant throughout the relevant time-period. She also smoked a pack of cigarettes a day despite her provider's advice to quit smoking. (Tr. at 619, 1000-1010) Finally, Ms. Grindley was a no-show or canceled a number of therapy appointments. (Tr. at 856-877)

Dr. Patricia L. Griffen, Ph.D., evaluated Ms. Grindley on July 14, 2016, and found Ms. Grindley's mental impairments were not debilitating. (Tr. at 796-799) Dr. Griffen opined that Ms. Grindley could communicate in an intelligible manner, could cope with mental demands of work, could attend and sustain concentration, and could complete work in an acceptable timeframe. (Tr. at 799) While Ms. Grindley did have an inpatient hospitalization for suicidal ideation, treatment improved her symptoms over her hospital stay. (Tr. at 723, 812) Treatment was certainly beneficial to Ms. Grindley, which makes her noncompliance troubling.

The medical evidence is relatively weak; no doctor placed a functional restriction on Ms. Grindley; she could perform some activities of daily living; and she did not

require aggressive treatment. The ALJ properly evaluated the record as a whole in finding that Ms. Grindley could perform light work with some limitations.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Grindley was not disabled. The ALJ properly evaluated Ms. Grindley's impairments, and the RFC incorporated all of her limitations. The decision, therefore, should be affirmed and the case dismissed, with prejudice.

DATED this 14th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE